**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Time Bank, an Illinois state-chartered bank and Illinois corporation, 626 Talcott Road Park Ridge, IL 60068 | ) Case No. ) ) ) ) ) Judge |
| Plaintiff, | ) |
| | ) |
| v. | ) ) |
| | ) |
| Harrison K. Wolstein, as Trustee of the Scott A. Wolstein Declaration of Trust dated December 27, 1993, as amended, 60 West 23rd Street, Apt. 914 New York, New York 10010 | ) ) ) ) ) ) ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

Plaintiff Time Bank ("Time Bank" or "Lender"), for its Complaint against Defendant Harrison K. Wolstein, as Trustee of the Scott A. Wolstein Declaration of Trust dated December 27, 1993, as amended (the "Scott Trust"), states as follows:

**NATURE OF THE ACTION**

1.      This is an action on a loan guaranty. In December 2021, Time Bank's predecessor, Northwest Bank & Trust Company, loaned $1,845,200 to Cleveland Riverfront Retail LLC to fund a development project in Cleveland, and Scott A. Wolstein guaranteed payment and performance of the loan.

2.      Scott Wolstein died in May 2022. His trust, the Scott A. Wolstein Declaration of Trust, then agreed in writing to become a guarantor of the loan and to assume all of his obligations under the guaranty.

3.      Cleveland Riverfront Retail is insolvent. In 2024, it consented to the appointment of a receiver over all of its assets, and it has failed to make required payments on the loan. Despite Time Bank's written demand, the Scott Trust has not honored the guaranty.

4.      Time Bank, which now owns and holds the loan, declares the entire balance immediately due. It asks this Court for judgment against the Trustee for the full amount owed, more than $1.7 million in unpaid principal, plus interest, late charges, and costs of collection, and for an order requiring the Scott Trust to provide the financial statements the guaranty requires.

## PARTIES, JURISDICTION, AND VENUE

5.      Time Bank is an Illinois state-chartered bank whose main office and principal place of business are in Park Ridge, Illinois; it is a citizen of Illinois. Time Bank is the successor-in-interest to Northwest Bank & Trust Company, an Iowa state-chartered banking corporation ("Northwest"), pursuant to a Purchase and Assumption Agreement dated December 31, 2024. As Northwest's successor, Time Bank is the current owner and holder of the loan documents at issue in this matter.

6.      The Scott Trust is a trust organized and existing under the laws of the State of Ohio. On information and belief, the Scott Trust's principal place of administration is, and at all relevant times has been, in Ohio.

7.      Harrison K. Wolstein ("Harrison") is Trustee of the Scott Trust and, on information and belief, is domiciled in and a citizen of the State of New York.

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Time Bank is a citizen of Illinois. Harrison, as Trustee, is the real party in interest with respect to the Scott Trust, and he is a citizen of New York. Complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Time Bank's claims occurred in this District. The loan at issue was secured by, among other things, real property interests located in Cuyahoga County, Ohio, within this District, and it remains secured by an assignment of the tax-increment-financing revenues arising from that property; the Scott Trust is administered in Ohio. For the same reasons, this Court has personal jurisdiction over Defendant. See Ohio Rev. Code §§ 5802.02(A), 2307.382(A)(1).

## FACTUAL ALLEGATIONS

### The Business Loan Agreement and Related Loan Documents

10. On or about December 21, 2021, Cleveland Riverfront Retail LLC ("CRR"), the developer of the Cleveland project described below, entered into a loan agreement with Northwest (the "Business Loan Agreement") in connection with a loan to CRR in the principal amount of $1,845,200. A true and correct copy of the Business Loan Agreement is attached hereto as **Exhibit 1**.

11. Scott A. Wolstein ("Wolstein") is listed as the sole guarantor under the Business Loan Agreement. (*See* Ex. 1 p. 3.)

12. That same day, Wolstein, acting through Harrison as his attorney-in-fact, executed a commercial guaranty in favor of Northwest (the "Commercial Guaranty"). In the Commercial Guaranty, Wolstein guaranteed CRR's obligations under the promissory note described below. A true and correct copy of the Commercial Guaranty is attached hereto as **Exhibit 2**.

13. The Commercial Guaranty states that Wolstein:

> absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower [*i.e.*, CRR] to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of

collection, so Lender can enforce this Guaranty against Guarantor [*i.e.*, Wolstein] even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.

(Ex. 2 p. 1.)

14.     The Commercial Guaranty further requires the Guarantor to furnish the Lender with certain financial statements and information "as soon as available," and in any event by stated deadlines. The required items include annual balance sheets and income statements, due no later than one-hundred-twenty (120) days after the end of each fiscal year; tax returns; personal financial statements; K-1 statements; and debt and real estate schedules. (*Id.* pp. 1–2.)

15.     Additionally, CRR executed a promissory note in favor of Northwest (the "Note"), promising to pay the entire principal amount of the $1,845,200 loan, plus interest. A true and correct copy of the Note is attached hereto as **Exhibit 3**.

16.     The Note contains an acceleration provision stating that upon an event of default, the Lender "may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount." (Ex. 3 p. 2.)

17.     The Commercial Guaranty and the Note are identified as "Related Documents" under the Business Loan Agreement and are incorporated into, and form part of, that agreement. (*See* Ex. 1 p. 7.)

18.     The Business Loan Agreement, Commercial Guaranty, and Note were modified pursuant to an Addendum to Business Loan Agreement and Other Loan Documents, also dated December 21, 2021, among CRR, Northwest, and Wolstein (the "Addendum"). Among other things, the Addendum amended the default provisions of the Business Loan Agreement and the Note, including by providing that a payment default occurs where CRR "fails to make any payment

4

within five (5) days of the date when due." A true and correct copy of the Addendum is attached hereto as **Exhibit 8**.

*The TIF Agreement and the Assignment of TIF Payments to the Lender*

19.     On or about December 21, 2021, CRR entered into a Tax Increment Financing Agreement with the City of Cleveland (the "TIF Agreement") relating to the development of land known as Permanent Parcel Number 101-11-016.

20.     The TIF Agreement and the related Escrow Agreement (the "Escrow Agreement," under which The Huntington National Bank originally served as escrow agent; on information and belief, Argent Institutional Trust Company has since succeeded The Huntington National Bank in that role) include a Primary Debt Schedule, attached as Exhibit C to the Escrow Agreement, setting forth the amounts and timing of payments related to the project. Payments under the TIF Agreement flow through the Escrow Agreement and fund the debt service on CRR's loan.

21.     In connection with CRR's obligations under the Business Loan Agreement and its Related Documents, CRR entered into a Collateral Assignment of Tax Increment Financing Agreement and Escrow Agreement in favor of Northwest (the "TIF Assignment"). A true and correct copy of the TIF Assignment is attached hereto as **Exhibit 4**.

22.     Under the TIF Assignment, as security for repayment of all amounts that may become due and payable to the Lender under the Business Loan Agreement, CRR assigned to the Lender the right to receive payments in connection with the TIF Agreement and its Primary Debt Schedule, "and create[d] a security interest in all the right, title and interest of" CRR in those payment rights. (Ex. 4 ¶ 1.)

*Wolstein's Death and the Scott Trust's Assumption of the Guaranty*

23.     On May 26, 2022, Wolstein died.

24. Under the Business Loan Agreement and Related Documents, Wolstein's death constituted an event of default unless CRR timely provided a replacement guarantor acceptable to the Lender. (*See* Ex. 8 § 1(G).)

25. On or about July 28, 2022, CRR and Northwest entered into a Forbearance Agreement and First Modification of Business Loan Agreement and Other Loan Documents (the "First Modification"). In the First Modification, Northwest agreed to forbear so that CRR would have time to provide a replacement guarantor, and the parties contemplated that the Scott Trust would serve as the replacement guarantor. CRR also acknowledged that the principal amount outstanding under the loan was $1,676,864. A true and correct copy of the First Modification is attached hereto as **Exhibit 5**.

26. In or around June 2023, CRR, Northwest, and the Scott Trust entered into a Second Modification of Business Loan Agreement and Other Loan Documents (the "Second Modification"). Harrison signed the Second Modification twice: for the Scott Trust, as its Trustee, and for CRR, as Executor of Wolstein's estate, which indirectly owns CRR. A true and correct copy of the Second Modification is attached hereto as **Exhibit 6**.

27. In the Second Modification, CRR acknowledged and agreed that the principal amount outstanding under the loan as of the effective date was $1,794,488.00, and that the Lender held a reserve of $50,712.00 that had not yet been advanced. (Ex. 6 ¶ 1.) (The loan provided for staged advances.)

28. The Scott Trust was added as an additional Guarantor, as that term is defined in the Commercial Guaranty. (*See* Ex. 6 ¶ 2.)

29. Pursuant to the Second Modification, the Scott Trust "jointly and severally assume[d] all obligations as Guarantor under the [Commercial] Guaranty." (*Id.*)

30.     The Second Modification also restated the Note's payment schedule. As restated, the Note requires CRR to make semiannual principal payments, each equal to one-half of the total annual debt service payments set forth on the Primary Debt Schedule; the first such payment was due August 1, 2023, and subsequent payments are due each June 1 and December 1 thereafter. The Note also requires monthly payments of accrued unpaid interest, and one final principal and interest payment of $1,592,908.00 due on December 1, 2027 (the "Maturity Date"). (Ex. 6 ¶ 4.)

***CRR's Insolvency and the Receivership***

31.     On or about August 20, 2024, Cleveland International Fund – Flats Phase III, Ltd. ("CIF") moved for the appointment of a receiver over CRR's assets. CIF is another lender to CRR, and its loan is secured by a mortgage on the project property. CIF filed its motion in an action styled *Cleveland International Fund – Flats Phase III, Ltd. v. Cleveland Riverfront Retail LLC*, No. CV-24-102282 (Cuyahoga Cty. Ct. Com. Pl.), pursuant to Ohio Revised Code § 2735.01(A)(6), which authorizes the appointment of a receiver where an entity "is insolvent" or is "in imminent danger of insolvency."

32.     CRR, on information and belief acting through Harrison, filed an Acknowledgment, Consent and Joinder in CIF's motion, consenting to the appointment of a receiver over all of CRR's assets. On information and belief, CRR did so without notice to, or the prior written consent of, the Lender.

33.     On August 29, 2024, the court granted CIF's motion as unopposed and appointed a receiver over all of CRR's assets, finding by clear and convincing evidence that the requirements of R.C. § 2735.01(A)(6) were satisfied.

34.     The receivership order originally excepted from any free-and-clear sale the "existing liens securing previously funded tax increment financing in favor of Northwest Bank &

7

Trust Company." In June 2025, CIF moved, without opposition from CRR, to remove that exception, representing to the court that "the TIF lender's right to repayment through identified tax payments will remain unaffected." The motion was granted.

35. CRR's insolvency, its consent to the appointment of a receiver, and the appointment of a receiver over CRR's property each constitute an Event of Default under the "Death or Insolvency" provisions of the Business Loan Agreement and the Note, which require no notice to CRR and are not subject to any cure period. (Ex. 1 p. 5; Ex. 3 p. 2.)

36. Under the Business Loan Agreement, upon an Event of Default of the insolvency type, all Indebtedness immediately becomes due and payable automatically, without notice of any kind to CRR. (Ex. 1 p. 5.) Time Bank proceeds on its declaration of acceleration set forth below.

***The Payment Defaults, the Demand, and Acceleration***

37. Pursuant to the Purchase and Assumption Agreement described above, Time Bank succeeded Northwest as owner and holder of the loan documents.

38. As a result of a reduction in payments under the TIF Agreement, payments due under the Note, as modified, fell delinquent.

39. On September 25, 2025, counsel for Time Bank sent correspondence to Harrison regarding the delinquency, which then totaled $11,093.45, and demanding payment from the Scott Trust in accordance with its obligations as Guarantor (the "Demand"). A true and correct copy of the Demand is attached hereto as **Exhibit 7**.

40. Harrison did not respond to the Demand or otherwise cause the Scott Trust to abide by its obligations under the Commercial Guaranty and the Second Modification. The demanded delinquency remains unpaid.

41. CRR thereafter failed to make the semiannual principal payments due under the

Note, as modified, on December 1, 2025 (in the amount of $63,756.25) and on June 1, 2026 (in the amount of $64,393.82). Those amounts, together with the previously demanded delinquency and accrued unpaid interest and late charges, remain unpaid.

42. Each such failure to pay became an Event of Default under the Business Loan Agreement and the Note, as amended by the Addendum, five (5) days after the date each payment was due, without any requirement of notice from the Lender. (Ex. 8 §§ 1(G), 2(C).) The Scott Trust's failure to pay those amounts is a breach of the Commercial Guaranty, which it assumed in the Second Modification.

43. Upon default, the loan accrues interest at the increased default rate of 7.75%. (*See* Ex. 3 p. 1.)

44. In the event of default, Time Bank is entitled to recover all costs and expenses incurred, including attorneys' fees, in connection with enforcement of the Commercial Guaranty and the other loan documents. (Ex. 2 p. 2, as amended by Ex. 8 § 3(B).)

45. Based upon the Events of Default described above, Time Bank is entitled to and does hereby declare the entire unpaid principal balance of the loan, and all accrued unpaid interest, immediately due and owing. (*See* Ex. 3 p. 2.)

46. The Business Loan Agreement, the Note, the Commercial Guaranty, the Addendum, and the Second Modification are each governed by the laws of the State of Iowa. (*See, e.g.,* Ex. 3 p. 2; Ex. 6 ¶ 14; Ex. 8 § 5.)

***The Scott Trust's Financial-Reporting Default***

47. At no time since it became Guarantor in June 2023 has the Scott Trust provided Time Bank or its predecessor, Northwest, with any of the financial statements and information

required by the Commercial Guaranty, including the annual statements due no later than one hundred twenty (120) days after the end of each fiscal year. (*See* Ex. 2 pp. 1–2.)

48.     All conditions precedent to filing this action have been performed, have occurred, or have been waived.

**<u>COUNT I – BREACH OF CONTRACT</u>**
**(Commercial Guaranty, as Assumed by the Scott Trust in the Second Modification)**

49.     Time Bank repeats and realleges the preceding paragraphs for this Count I.

50.     The Commercial Guaranty (Ex. 2), as assumed by the Scott Trust pursuant to Section 2 of the Second Modification attached as **Exhibit 6**, is a valid and enforceable contract of the Scott Trust, which Time Bank, as successor-in-interest to Northwest, is entitled to enforce.

51.     Time Bank performed all material obligations required of it under the loan documents.

52.     The Scott Trust breached the Commercial Guaranty, as assumed in the Second Modification, by failing to pay the Indebtedness, including the delinquent amounts and semiannual principal installments described above and, upon acceleration, the entire unpaid balance of the loan, despite the Demand by Time Bank.

53.     The Commercial Guaranty is a guaranty of payment and performance, and not of collection; Time Bank may enforce it against the Scott Trust without first exhausting its remedies against CRR or any collateral. (Ex. 2 p. 1.)

54.     As a direct and proximate result of that breach, Time Bank has been damaged in an amount to be proven at trial. Those damages consist of at least: the entire unpaid principal balance of the loan, which was not less than $1,703,058.03 as of June 24, 2026; accrued unpaid interest at the default rate; late charges; and attorneys' fees, costs, and other recoverable expenses, all of which continue to accrue.

10

## COUNT II – BREACH OF COMMERCIAL GUARANTY
### (Financial-Reporting Obligations)

55. Time Bank repeats and realleges the preceding paragraphs for this Count II.

56. As a separate and independent breach of the Commercial Guaranty, the Scott Trust has failed to furnish any of the financial statements and information required by the Commercial Guaranty since it became Guarantor in June 2023 (*see* Ex. 2 pp. 1–2), and Time Bank is entitled to production of that information.

57. Time Bank bargained for the right to receive the Guarantor's financial information so that it could assess and protect its position with respect to the Indebtedness. The Scott Trust's continuing refusal to furnish that information deprives Time Bank of its bargained-for contractual right, for which Time Bank has no adequate remedy at law. Time Bank is entitled to specific performance of the Scott Trust's financial-reporting obligations, including through preliminary and permanent injunctive relief.

**WHEREFORE**, Plaintiff Time Bank respectfully requests that this Court enter judgment in its favor and against Defendant Harrison K. Wolstein, as Trustee of the Scott A. Wolstein Declaration of Trust dated December 27, 1993, as amended, and grant Time Bank the following relief:

(i) Award Time Bank judgment on Count I in an amount to be proven at trial, consisting of the entire unpaid principal balance of the loan (not less than $1,703,058.03 as of June 24, 2026), plus accrued unpaid interest at the default rate, late charges, attorneys' fees, and costs, and all amounts recoverable under the applicable loan documents;

(ii) On Count II, order the Scott Trust to specifically perform its financial-reporting obligations under the Commercial Guaranty, and enter preliminary and permanent

11

injective relief requiring the Scott Trust to provide all statements, records, and information required by the loan documents;

(iii)     Declare that any judgment entered in this action shall not merge into, extinguish, impair, or otherwise affect the continuing validity, enforceability, or separate existence of the Note, Commercial Guaranty, Business Loan Agreement, and any Related Documents, and that all rights, remedies, liens, security interests, and obligations arising under such documents shall remain in full force and effect until satisfied in full in accordance with their terms; and

(iv)     Award Time Bank any other relief this Court deems just and proper.

Dated: July 17, 2026

Respectfully submitted,

*/s/ Mark M. Mikhaiel*
Mark M. Mikhaiel (0091656)
SCHNEIDER BELL LLP
1111 Superior Avenue East, Suite 2200
Cleveland, Ohio 44114
Telephone: (216) 696-4200
Facsimile: (216) 696-7303
mark@mysblaw.com

Robert J. Shapiro (N.D. Ohio admission pending)
Peter Spingola (N.D. Ohio admission pending)
CHAPMAN SPINGOLA, LLP
190 South LaSalle Street, Suite 3850
Chicago, Illinois 60603
Telephone: (312) 630-9202
rshapiro@chapmanspingola.com
pspingola@chapmanspingola.com

*Attorneys for Plaintiff Time Bank*